[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision Re: Writ of Habeas Corpus
In this action for writ of habeas corpus the petitioner is a sentenced inmate, now or formerly in the custody of the Warden at the Brooklyn Correctional Institution within the Judicial District of Windham. The petitioner claims that in a criminal case within the Judicial District of Ansonia-Milford at Milford before the Honorable Bruce Thompson, a Judge of the Superior Court, on March 30, 1999, he pled guilty under the Alford doctrine.[1]
The petitioner now claims that his trial counsel failed to conduct an adequate investigation in the potential defenses to the prosecution's case; he failed to conduct a sufficient investigation into the State's proof; he failed to conduct sufficient investigation in the defense case; he failed to conduct sufficient investigation into the witnesses available to support potential defenses; failed to adequately advise the petitioner concerning sentencing; failed to advise the petitioner concerning his options concerning potential defenses; failed to adequately advise the petitioner concerning the consequences of his pleas and failed to adequately ensure that the petitioner's pleas were knowing, intelligent and voluntary.
 FACTS:
The petitioner had been arrested by warrant on September 24, 1997 and charged in the first count with the crime of Robbery in the first degree in violation of General Statutes § 53a-134 a class B felony, a crime punishable by imprisonment for not less than one nor more than twenty years. The petitioner was also charged with the crime of Burglary in the first degree in violation of General Statutes § 53a-101, another class B felony punishable by imprisonment for not less than one nor more than twenty years; and lastly, the petitioner was charged with assault of an elderly person in violation of General Statute § 53a-60b, a class D felony, punishable by a term of imprisonment of not less than two years nor more than five years. His maximum exposure was forty five years of imprisonment.
The crime allegedly was committed on September 2, 1997. A 72 year old CT Page 1840 man with a "seriously swollen" right eye claimed that he had been assaulted in his own apartment and robbed of $150 at 1:30 AM by the petitioner who lived in the apartment directly below the victim. The petitioner knew the victim for about three years. The petitioner was then thirty-nine years of age. The victim was familiar with the petitioner and positively identified him as his assailant. The petitioner, when interviewed by the police, claimed he did not get home until 4:30 AM and that his girlfriend, Corine LaFountaine, was with him throughout the night. The girlfriend was interviewed by the police in the presence of the petitioner. She said they had been at the Pulaski Club until 2:00 AM and then at Jim's (Boutin) house until about 4:30 AM. The police affidavit itemized several paragraphs of events that tended to support the notion that the petitioner was angry at the victim and that the petitioner believed the victim owed him money. The police subsequently interviewed James Boutin who lives about a block away from the crime scene and was said to be an alibi witness. Boutin told the police that the petitioner told him that he "got in trouble" and that he had been accused of hitting "the old man". Boutin told the police that he and the petitioner had been to a bar on the night in question and that the two of them had returned to Boutin's house. He denied that anyone else was with them.
The police also interviewed a person by the name of Brian Ackley who lived in an adjacent building. Ackley indicated that the petitioner had committed a similar assault upon him in the early morning hours two to three weeks earlier in an aborted attempt to obtain money. Ackley said he never reported the incident to the police.
The case against the petitioner, Paul Begnoche, was prosecuted by Mary Galvin and the petitioner was defended by attorney David Egan. Attorney Egan was admitted to the bar in 1972 and practiced exclusively in the area of criminal law since 1976. As the Public Defender for the Ansonia-Milford judicial district he had handled between five hundred and a thousand Part A criminal cases. He had extensive trial experience. Attorney Egan testified that the State had an open file policy, that he obtained everything in the State's. file, occasionally even the State's work product. All of the information including witnesses statements he shared with the petitioner. He was aware that the defendant denied his involvement in this crime and that he sought to establish an alibi defense. Atty Egan filed a notice of intent to raise this defense. The witnesses listed were Corine LaFountain and James Boutin.
 I.
During the petitioner's testimony at the habeas hearing the petitioner focused on three areas of alleged ineffective assistance. First, he CT Page 1841 claimed that the public defender failed to interview critical witnesses who could verify his alibi. Attorney Egan said that he or his investigator or the both of them interviewed the person with whom the petitioner had claimed to be with on the night of the crime, James Boutin. The petitioner claims that he and his girlfriend were at Boutin's home at the time of the alleged assault and remained there until 4:30 AM, three hours after the assault. Boutin's statements were inconsistent with the Begnoche claim.
The court finds this claim to be unsupported by the evidence. The petitioner claims that neither the public defender's investigator nor the public defender interviewed his girlfriend even though he brought her to the meetings he had with his attorney. He testified that notwithstanding his request that they take a statement from her they did not do so. Atty Egan recalls that a female companion was with the petitioner when he came to his office but that the petitioner never suggested that she be interviewed. Her statement that she was with Begnoche for the entire evening had been given to the police, was in the police affidavit and was not consistent with Boutin's statement that he and Begnoche were alone.
In the police affidavit attached to the arrest warrant (State's Exhibit A) the investigating officer asked James Boutin directly if anyone else was present at his apartment besides the petitioner. Boutin told the police no one else was there. This directly contradicted the petitioner's statement to the police that both he and his girlfriend were at Boutin's house. It is worthy of note that at the habeas hearing the petitioner indicated that his girlfriend, Corine LaFountain, was with him in court yet he did not call her to corroborate his alibi defense or to support the petitioner's claim that she was a ready willing and able witness who was not interviewed. For reasons and facts more fully developed hereafter, the court finds the petitioner's claim in this regard is disingenuous and lacking in credibility.
 II.
The petitioner's second claim was that there was a video camera on an auto body shop across the street from the crime scene and that the video tape would show that the petitioner never entered the building where he and the victim lived on the night in question. The petitioner claims ineffective assistance of counsel in that the lawyer never obtained the video tape which would have shown that he did not enter the building on the night of the crime.
The crime was alleged to have been committed in the early morning hours of September 2, 1997. The warrant was presented to a judge and probable cause was found on September 24, 1997. The petitioner was subsequently CT Page 1842 arrested in October, 1997 and presented to the Geographical Area court in Derby. He was at all times prior to the imposition of sentence, out on bond. Court records reflect that the public defender's office was appointed in the arraignment court on November 24, 1997. The case was transferred to Part A on January 6, 1998 (Flynn, J.) Attorney Egan testified that it was not for some number of months after he undertook to represent the petitioner in March of 1998 that it was disclosed that there might be a helpful video tape. At that point the public defender's office wrote to the owner of the auto body business. The owner was interviewed and disclosed that the video tapes are reused after thirty days and therefore no longer existed. The evidence therefore supports a finding that the tape in question was not in existence at the time the public defender's office was appointed to represent the petitioner. The claim of ineffective assistance in this regard is therefore unsupported by the evidence.
 III.
The third claim of the defendant is that he believed based on his conversations with Attorney Egan that following the plea negotiations he would only get six months to serve. Given Mr. Begnoche prior record, the strength of the State's case and the weaknesses of the defense, such an expectation was very unrealistic. Much of the evidence regarding this point is very clear.
Attorney Egan testified that based upon interviewing the complaining witness and Ackley, taken together with Boutin's failure to corroborate Begnoche's statements that the girlfriend was with him in his house, this appeared to be a very weak defense. The prosecution on the other hand had a very strong case given the pry marks on the victim's door, the easily established age of the victim, the identification by the victim, and the injuries to the victim. Based upon this analysis Attorney Egan entered into plea negotiations with the State's Attorney. The negotiations occurred between October, 1998 and February, 1999. The State agreed to reduce the charges to a single count of burglary in the second degree and to recommend a sentence often years suspended after serving five years with a right to argue for less.
State's Exhibit B is a transcript of the plea hearing before Judge Thompson. The petitioner entered a plea of guilty. Attorney Egan indicated to the court that the plea was an Alford plea. Attorney Galvin recited to the court all of the essential facts that the State believed they could prove, which if proven would have supported the original charges. The petitioner heard the facts as recited and the recommendation of ten years suspended after five years. The court thoroughly canvassed the petitioner. of particular note the petitioner was asked if he was CT Page 1843 satisfied with the advise of his attorney to which he responded "yes." The. court then asked: "[Y]ou understand that the plea agreement — at the time of sentencing the State will be recommending that you be sentenced to a term of 10 years being suspended after you serve 5 years. You will have a right to argue for a sentence less than that; however, do you understand that there is no guarantee that you will receive a sentence of less than 10 suspended after 5?" The petitioner answered "Yes, your honor." The court then stated: "What is guaranteed is that you wouldn't receive a sentence of more than that, and if I didn't think that I could impose that sentence or anything less, I would let you withdraw your plea and plead not guilty. Understood?" The petitioner again indicated he understood. Thereafter the court entered a finding that the plea had been knowingly and voluntarily made with the advise and assistance of competent counsel.
State's Exhibit C is a transcript of the sentencing hearing. The State represented that the petitioner had a significant criminal record, that he had served time and had ". . . at least three felonies." Attorney Galvin asked the court to sentence him to the recommended ten years suspended after five years served. Attorney Egan testified that he himself was hopeful for a six month sentence or even for a suspended sentence but was alarmed by a reference in the pre-sentence investigation to the fact that the petitioner had denied involvement in this case. He testified that he had instructed the petitioner to indicate to the probation officer that he was not to comment on that issue. Attorney Egan testified that he believed Mary Galvin would "walk all over him (the petitioner)for failing to accept responsibility."
While the petitioner is concerned about this issue of accepting responsibility and whether it should have been noted in the pre-sentence investigation or whether his attorney should have made remarks about this in the sentencing hearing, it is clear from the transcript that this issue was not a matter of primary importance to the sentencing judge.
The court in imposing sentence referred to the events not in terms of responsibility but rather in terms of the plea that had been previously entered, guilty. The court was mindful of the petitioners prior record and commented about it. The court was aware of a relatively favorable pre-sentence investigation and of Attorney Egan's view that a suspended sentence or, at most, six months was appropriate. The court considered the gravity of the offense and the prior criminal history and thereafter imposed a sentence of eight years suspended after three years with three years of probation and restitution to the victim of two hundred dollars within six months of his release from confinement. The petitioner was then given notice of his right to sentence review. CT Page 1844
The court finds with respect to this issue that there was some discussion between the petitioner and his attorney that he would argue for a possible sentence of six months or even the possibility of a suspended sentence. The court credits the testimony of the Public Defender that no promises nor representations were made that the petitioner would only receive a maximum of six months. The attorney was a seasoned veteran of plea negotiations and well aware of the unpredictability and vagaries of sentencing hearings. A promise or guarantee of a specific lesser sentence would have been folly on the part of counsel and, absent a strong showing, will not be presumed by this court.
The petitioner himself was no stranger to the criminal legal process. The record amply demonstrates the petitioner had the requisite knowledge for a guilty plea. The trial court had made it abundantly clear to him that the recommendation of ten years suspended after five years was a possible sentence the court could impose and that there were no guarantees of a lesser sentence. The court's thorough canvass was sufficient to satisfy the trial judge that the petitioner was not pleading guilty due to threats or promises outside the terms of the plea agreement. While the petitioner and his attorney may have harbored hopes of a lesser sentence, the record is clear that the petitioner fully understood what was on the table. Hopes and aspirations are not promises or guarantees. The petitioner lacks credibility on his assertion that he was guaranteed or promised six months or less.
 Conclusion
The law presumes that counsel is competent until evidence has been introduced to the contrary. Here the petitioner has failed to show that his attorney's performance was deficient and he has failed to show that there is a reasonable probability that, but for the claimed errors, the result of the proceeding would have been different.
The relief requested is denied.
Foley, J.